**Teodora CALVI, Plaintiff,**

v.

**PRUDENTIAL SECURITIES, INC., Defendant.**

**No. CV 93–2914 WJR (EEx).**

United States District Court, C.D. California.

Aug. 12, 1994.

Lionel Z. Glancy, Santa Monica, CA, for plaintiff.

Gregory A. Boss, Janet Simmons, Keesal, Young & Logan, Long Beach, CA, for defendant.

## MEMORANDUM OPINION

REA, District Judge.

Defendant Prudential Securities, Inc.'s Motion for Summary Judgment came on for hearing before the Court, the Honorable William J. Rea, Judge, presiding, on June 27, 1994. Lionel Z. Glancy of the Law Offices of Lionel Z. Glancy appeared on behalf of plaintiff Teodora Calvi. Gregory Boss and Janice Simmons of Keesal, Young & Logan appeared for defendant Prudential Securities, Inc. On July 8, 1994, after having reviewed the file in this case, the papers submitted in favor of and in opposition to the instant motion, as well as the arguments of counsel at the hearing on this matter, the Court entered an order granting the motion. The Court now issues this memorandum opinion, setting forth its findings of fact and conclusions of law.

### BACKGROUND

Plaintiff Teodora Calvi ("Calvi") is an allegedly unsophisticated widow who decided to invest the proceeds of her husband's life insurance policy when he died some years ago. Thus, in 1985, Calvi opened two securities accounts with defendant Prudential Securities ("Prudential"). Her complaint alleges that her broker, Prudential employee Thomas Stapelton, induced her to purchase three securities that were not "suitable" in light of her stated investment objectives and financial goals. Specifically, the second amended complaint asserts that:

(1) Prudential's broker, Tom Stapelton, warranted in August 1985 that the investments were "safe." Second Amended Complaint at ¶ 6.

(2) "Stapelton told Calvi that he would not allow her to get into anything risky." *Id.*

(3) Prudential breached its fiduciary duty by failing to disclose "material facts" such as (a) "the risks involved in purchasing or selling a particular security" and (b) "all

other material facts concerning the security." *Id.* at ¶ 11.

Prudential's instant motion for summary judgment is based on statute of limitations. Defendant contends that Calvi was aware or should have been aware of all of the facts necessary to her causes of action in 1985 when she was provided with the prospectuses for her investments—which disclosed the risks involved in each investment and stated that they were only suitable for certain individuals—and signed a subscription agreement stating that she read and understood them. *See* Stapelton Decl. and attached exhibits.[1] She should have known at that point, Prudential argues, that the alleged oral representations made by her broker were untrue, inasmuch as they conflicted with the written offerings. Calvi did not file suit until 1993, because she claims that she did not discover that she was losing principal on these investments until that time, or at the earliest some time in 1992. Defendant thus contends that Calvi's suit was not timely filed.

### DISCUSSION:

California's two year statute of limitations for negligence, Cal.Code Civ.P. § 339, and four year statute of limitations for breach of fiduciary duty, Cal.Code Civ.P. 343 [2], apply to Calvi's claims in this diversity action.[3] Prudential argues that Calvi discovered, or in the exercise of reasonable diligence should have discovered, all of the facts necessary to proceed with her causes of action in August 1985 when she was provided with the prospectuses for the three "questionable" investments. There is ample case law to support this position.

For example, in *Bull v. Chandler*, 1992 WL 103686, 1992 U.S.Dist. LEXIS 3686 (N.D.Cal.1992), the plaintiff was a wealthy but allegedly unsophisticated individual who was seeking low risk investments. His broker, defendant Chandler, told him that she would "investigate[ ] opportunities consistent with [his] investment goals, that she would direct plaintiff to the best investments, and that she would obtain for him a twenty-three percent return on all of his investments." *Id.* at *1, 1992 U.S.Dist. LEXIS 3686 at *3. Chandler provided plaintiff with prospectuses for several investments, which plaintiff told Chandler he did not read. She responded that his failure to read them was not a problem, because she would explain to him everything he needed to know. Thereafter, although plaintiff was provided with the documents, he did not read them, and relied exclusively on defendants representations in making his investment decisions. *Id.* at *1–2, 1992 U.S.Dist. LEXIS 3686 at *4.

Plaintiff failed to discover that his investments were unsuitable to meet his objectives until October 1984, when he decided to get a "second opinion." *Id.* at *2, 1992 U.S.Dist. LEXIS 3686 at *6. At that point, he brought suit alleging causes of action for, *inter alia,* federal securities violations and state law breach of fiduciary duty and negligence. The court held that plaintiff's claims were barred by the statute of limitations. In so holding the court stated as follows:

> [The evidence indicates] that prior to each transaction, Chandler gave a copy of the prospectus or offering document to the plaintiff and that by his signature plaintiff affirmed having read and relied upon the documents.... Most if not all of these documents stated that the investments

---

1. A subscription agreement for one of the investments, Prudential–Bache Energy Income Partnerships II, signed by Calvi, reads, in part, as follows:

    The undersigned Subscriber hereby acknowledges receipt of the Prospectus and subscribes for Units in and agrees to become a Limited Partner.... The undersigned Subscriber represents and warrants that it meets all the suitability standards set forth in Exhibit C to the prospectus that are applicable to such Subscriber.

2. Cal.Civ.Code § 343 is the general statute of limitations for actions for relief not specifically identified elsewhere in the Code.

3. Prudential maintains that because Calvi's breach of fiduciary duty claim "sounds in negligence" it is also governed by a two year statute of limitations. *See, e.g., Vucinich v. Paine Webber, Inc.,* 739 F.2d 1434 (9th Cir.1994). The Court need not decide which limitations period applies, however, because Calvi's claims are barred even if the longer four-year statute is applied.

were illiquid, were without a market, and were designed as tax shelters, but disclaimed any assurance of tax benefit and disclaimed any assurance of cash distribution. Defendants argue that when plaintiff received these documents, signed the subscription agreements and invested, he was on inquiry notice of any fraud because the statements in the offering memoranda were in direct contradiction to the misrepresentations he claims were made by Chandler.

In response to this argument, plaintiff submitted a declaration stating merely that he could not understand the offering materials and that Chandler assured him that he need not read the materials because she would explain all the pertinent information. On the basis of this statement, plaintiff argues that Chandler actively concealed her fraud and that he is entitled to the benefit of equitable tolling. Neither the pleading nor plaintiff's evidentiary submission is adequate to entitle him to the benefit of equitable tolling.

*Id.* at *4, 1992 U.S.Dist. LEXIS 3686 at *12–13. The court concluded that plaintiff was on constructive notice of the fraud as early as the date of his first investment. *Id.*[4]

The *Bull* court also determined that, regardless of when the statute of limitations began to run, any reliance by plaintiff on the oral statements of his broker was unreasonable in light of the disclaimers in the written memoranda. *Id.* at *8, 1992 U.S.Dist. LEXIS 3686 at *24. It stated that

[t]he evidence before the court demonstrates a complete lack of justifiable reliance. Assuming that the alleged misrepresentations were proven, a reasonable jury could not but reach the conclusion that plaintiff, without reason or justification, recklessly placed blind faith in Chandler and stuck his head in the sand, by

ignoring the contradictions between the offering materials and her representations.

*Id.* Because justifiable reliance was an element of all of plaintiff's claims, the court held that both plaintiff's claims that had survived the statute of limitations defense and those that had not were subject to summary judgment based on this issue.

Numerous other cases have also found that the statute of limitations begins to run when a plaintiff should have discovered the alleged fraud, and that the receipt of a prospectus disclosing risks puts a plaintiff on notice of any misrepresentations or fraud concerning those risks. In *Dodds v. Cigna Securities, Inc.*, 12 F.3d 346 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994), the plaintiff was a widow with a tenth grade education. She asserted federal securities claims and pendent state claims under New York law for fraud, breach of fiduciary duty, and negligent misrepresentation. The broker had provided her with prospectuses and other written materials which she did not read because they "looked like greek" to her. *Id.* at 348. The court found that the written materials contained warnings that "were sufficient to put a reasonable investor of ordinary intelligence on notice of the commissions, the risk, and the illiquidity of [the] investments," and that such warnings put plaintiff on constructive notice of her claims, despite the fact that she had never read the documents. The court granted summary judgment on plaintiff's federal causes of action, and dismissed her pendant state claims for lack of jurisdiction. *See also DeBruyne v. Equitable Life Assurance Soc. of the U.S.*, 920 F.2d 457, 466 n. 18 (7th Cir.1990) (plaintiff "cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put her on inquiry notice"); *Topalin v. Erhman*, 954

4. The *Bull* court distinguished *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434 (9th Cir.1984), in which the Ninth Circuit held that the issue of whether the investor was on notice of the fraud or misrepresentations so as to start the statute of limitations running—particularly in light of reassuring statements made by her broker—was a question of fact for the jury. *Vucinich* did not involve a situation where the alleged oral misrepresentations were contradict-

ed by written prospectuses or offering memoranda (as in both *Bull* and the instant case). Rather, the broker simply recommended an investment strategy to plaintiff, and continued to reassure her despite a declining market. Under these circumstances, the court held that the issue of when plaintiff should have been on notice that her broker's statements were fraudulent was a disputed factual question which precluded a grant of summary judgment.

F.2d 1125, 1132 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992) (breach of fiduciary duty statute of limitations began to run upon investor's receipt of prospectus disclosing risks which contradicted alleged oral statements); *Nerman v. Alexander Grant & Co.*, 926 F.2d 717 (8th Cir.1991) (statute of limitations for fraud and negligence begin to run upon receipt of risk disclosure document).

Defendant contends, quite convincingly, that the case at bar is "on all fours" with *Bull, Dodds,* and the other cases cited above. Calvi was given the written prospectuses for the three investments, and signed a subscription agreement for each stating that she had read the attendant prospectus. Each prospectus detailed the risks involved in the particular investment being described. Consequently, Calvi is charged with notice from the time she signed the agreements (in 1985) that Stapelton's statements contradicted the written offering materials, even if, like the plaintiffs in *Bull* and *Dodds,* she never read the documents.

Plaintiff does not distinguish Prudential's case law, but instead relies on *Hobbs v. Bateman Eichler, Hill Richards,* 164 Cal.App.3d 174, 210 Cal.Rptr. 387 (1985), which she argues demonstrates that her claims were tolled until her actual discovery of wrongdoing. Here she argues that such discovery did not occur until she realized that there were losses in her accounts (some time in 1992). However, *Hobbs* does not support plaintiff in the instant case.

In *Hobbs,* the plaintiff was a widow who wanted a broker to handle the investment portfolio her husband had left to her when he died. She went to defendant Ravenscroft, and made clear to him that she wanted her stocks handled conservatively because the interest from her husband's portfolio was, in essence, her only income. Ravenscroft filled out a form which stated that Hobbs' investment goals were conservative, but later changed this form without her permission. Furthermore, although Ravenscroft had no authority to make trades or purchases without Hobbs' consent, he did so on a regular basis, "churning" her account to generate commissions for his firm. Hobbs did receive "confirmation slips" for each of these transactions, but did not know the balance in her account, or that many of the "distribution checks" she received from the defendants were actually being paid out of principal. *Id.* at 181–84, 210 Cal.Rptr. 387.

The court held that plaintiff's claims—particularly her claim for breach of fiduciary duty—were not barred by the statute of limitations, because she had no duty investigate. The facts indicated that she did not even become suspicious that her account was being handled improperly until within the limitations period. *Id.* at 202, 210 Cal.Rptr. 387.

The present case is clearly distinguishable from *Hobbs.* In *Hobbs,* there were no written offering memoranda—or any other documentation—which specifically contradicted the broker's oral assurances. Furthermore, *Hobbs* concerned a broker's unauthorized trading without the plaintiff's knowledge. No such claim of blatant wrongdoing has been made in this action.[5]

Inasmuch as plaintiff was provided with documents detailing the risks involved in each of the investments she purchased—and in fact signed forms stating that she had read the material given to her—and because the warnings in these documents directly conflicted with her broker's alleged representations, plaintiff was on inquiry notice of her claims in 1985. Whether or not she had been financially damaged at that time is irrelevant—she could have brought an action for rescission. Plaintiff did not file the instant action until 1993, eight years after she purchased the investments at issue. Therefore, both of Calvi's claims—for negligence and breach of fiduciary duty—are barred by the statute of limitations.

---

**5.** The only other case cited by plaintiff, *Twomey v. Mitchum, Jones & Templeton,* 262 Cal.App.2d 690, 69 Cal.Rptr. 222 (1968) is similarly inapposite. Like *Hobbs, Twomey* concerned a breach of fiduciary duty claim that was not premised on misrepresentations that were directly contradicted by written offering materials.